**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

Richmond Division

| | |
|---|---|
| ANDREW MALON , individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FRANKLIN FINANCIAL CORPORATION, RICHARD T. WHEELER, JR.,  HUGH T. HARRISON II, WARREN A. MACKEY, ELIZABETH W. ROBERTSON, GEORGE L. SCOTT, RICHARD W. WILTSHIRE, JR., PERCY WOOTTON, FRANKLIN FEDERAL SAVINGS BANK, and TOWNEBANK, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

C.A. No. 3:14 - CV-0067 1

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND INDIVIDUAL CLAIMS FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Andrew Malon ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1.      Plaintiff brings this action on behalf of himself and the public stockholders of Franklin Financial Corporation ("Franklin" or the "Company") against Franklin's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) and TowneBank for their breaches of fiduciary duties and/or aiding abetting such breach, arising out of their attempt to sell the Company to TowneBank by means of an unfair process and for an unfair price. Plaintiff also brings a claim *individually* against Defendants for their violations of Sections

1

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.      Franklin operates as the holding company for Franklin Federal Savings Bank ("Franklin Bank"), which provides retail deposit, investment brokerage, and commercial real estate finance services in Richmond and Central Virginia.

3.      On July 15, 2014, TowneBank and the Company announced that they had entered into a definitive agreement on July 14, 2014 ("Merger Agreement") under which TowneBank will acquire all of the outstanding shares of Franklin in an all-stock transaction (the "Proposed Transaction"). If consummated, Franklin stockholders will receive 1.40 shares of TowneBank stock for each share of Franklin stock that they own ("Exchange Ratio"). The Proposed Transaction is valued at approximately $275 million, or the value of $23.04 per share based on the closing price of TowneBank on the last trading date before the announcement of the Proposed Transaction.

4.      The Board entered into the Proposed Transaction at a time when the Company was reporting consecutive quarters of strong financial results and growth. For example, for each of the second and third quarters of the 2014 fiscal year, Franklin reported a $0.40 increase in tangible book value. In addition, from fiscal year 2011 to fiscal year 2013, Franklin improved its return on average assets from 0.13% to 0.88%.

5.      Indicative of its strong growth, Franklin's stock price has soared since the Company completed its mutual to stock conversion on April 28, 2011. From an initial public offering ("IPO") price of $10.00 per share, Franklin's stock traded at a high of $24.60 per share on July 2, 2014, just before the announcement of the Proposed Transaction. Since the deal announcement,

Franklin's stock has tumbled to a post-announcement low of $18.81 per share on September 26, 2014.

6.     Despite the Company's solid, and continually improving, performance, the Board failed to secure a sufficient price for the Franklin stockholders' stock.

7.     As a result of the flawed process described herein, the Proposed Transaction consideration is inadequate and does not account for Franklin's recent strong performance as well as its future growth prospects. In fact, the Proposed Transaction provides Franklin stockholders with a *negative premium* to the Company's recent trading high of $24.60 per share.

8.     Noticeably absent from the Merger Agreement is a collar provision that protects Franklin stockholders in the event that TowneBank's stock price decreases prior to the consummation of the Proposed Transaction.  Indeed, since the announcement of the Proposed Transaction, TowneBank's stock price has steadily declined.  The value of the proposed consideration being provided to Franklin stockholders has fallen more than *16%* since the deal was first announced – from $23.04 per Franklin share (based on TowneBank stock's closing price of $16.46 per share on July 14, 2014) to $19.31 per Franklin share (based on TowneBank stock's recent closing stock price of $13.79 per share on September 26, 2014).

9.     Defendants have exacerbated their breaches of fiduciary duty by attempting to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the Merger Agreement, defendants agreed to: (i) a strict "no-shop" provision that prevents the Company from soliciting other potential acquirers or even in continuing discussions and negotiations with potential acquirers – in fact, the Company may not even respond to unsolicited inquiries from potential competing bidders that may lead to a bona fide offer; (ii) a "notification" provision that requires

3

the Company to notify TowneBank of any unsolicited bona fide written proposals received by the Company, including the identity of the competing bidder and confidential terms of the proposal; (iii) a "matching" provision that provides TowneBank with five (5) business days to merely match any competing proposal in the event one is made; and (iv) a provision that requires the Company to pay TowneBank a termination fee of $11 million in order to enter into a transaction with a superior bidder.

10.     In addition, on July 14, 2014, concurrently with the execution of the Merger Agreement, all Board members and executive officers of the Company have entered into voting agreements ("Voting Agreements") whereby they agreed to vote their shares in favor of the Proposed Transaction.  According to Amendment 1 of the Schedule 14A Preliminary Proxy Statement that Franklin filed with the Securities and Exchange Commission ("SEC") on September 17, 2014 ("Proxy"), these insiders collectively hold over 16% of the Company's outstanding stock.

11.     These deal protection provisions and Voting Agreements, particularly when considered collectively, substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Franklin.

12.     In pursuing the Proposed Transaction and agreeing to the inadequate Exchange Ratio, without any collar mechanism, offered by TowneBank, each Defendant has violated applicable law by directly breaching and/or aiding and abetting breaches of fiduciary duties of loyalty, good faith, and due care owed to Plaintiffs and the putative class of Franklin stockholders.

13.     To make matters worse, on September 17, 2014, Franklin filed the Proxy with the SEC, in which the Board recommended that stockholders vote in favor of the Proposed

4

Transaction. The Proxy fails to provide the Company's stockholders with material information and/or provides them with materially misleading information, thereby rendering the stockholders unable to make an informed decision on whether to approve the Proposed Transaction. Thus, Defendants have violated the federal securities laws and breached their fiduciary duty of candor by failing to disclose material information to the Franklin stockholders necessary for them to determine whether to vote in favor of the Proposed Transaction.

14.     The Individual Defendants have breached their fiduciary duties of loyalty, due care, independence, good faith, candor and fair dealing, and TowneBank has aided and abetted such breaches by Franklin's officers and directors. Plaintiff seeks to enjoin the Proposed Transaction unless and/or until Defendants cure their breaches of fiduciary duty and violations of federal securities law.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

16.     The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants

have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

18.     Plaintiff is, and has been at all relevant times, the owner of shares of Franklin common stock.

19.     Franklin is a corporation organized and existing under the laws of the State of Virginia. The Company maintains its principal executive offices at 4501 Cox Road, Glen Allen, Virginia 23060.

20.     Defendant Franklin Bank is a wholly owned subsidiary of Franklin and a federally chartered savings bank.

21.     Defendant Richard T. Wheeler, Jr. ("Wheeler") is the Company's Chairman, President, and CEO and has been the Company's CEO and has been a director of Franklin Bank and the Company since 1992 and 2010, respectively.

22.     Defendant Hugh T. Harrison II ("Harrison") has been a director of the Company and Franklin Bank since 2010 and 2008, respectively.

23.     Defendant Elizabeth W. Robertson ("Robertson") has been a director of the Company and Franklin Bank since 2010 and 1996, respectively.

24.     Defendant George L. Scott ("Scott"), has been a director of the Company and Franklin Bank since 2010 and 2008, respectively.

25.     Defendant Warren A. Mackey ("Mackey") has been a director of the Company and Franklin Bank since 2012.

26.     Defendant Richard W. Wiltshire, Jr. ("Wiltshire") been a director of the Company and Franklin Bank since 2010 and 2008, respectively.

27.    Defendant Percy Wootton ("Wootton") has been a director of the Company and Franklin Bank since 2010 and 1979, respectively.

28.    Defendants Wheeler, Harrison, Mackey, Robertson, Scott, Wiltshire, and Wootton are collectively referred to as Individual Defendants and/or the Board.

29.    Defendant TowneBank is a Virginia corporation with its principal executive offices located at 5716 High Street, Portsmouth, Virginia. TowneBank acts as a holding company for various banking and non-banking subsidiaries that provides retail and commercial banking services for individuals, and small and medium-sized businesses in southeastern Virginia and northeastern North Carolina. TowneBank operates in three business segments: banking, realty, and insurance.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

30.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiff and the other public stockholders of Franklin and owe them, as well as the Company, a duty of care, loyalty, and candor in the management and administration of the affairs of the Company and in the use and preservation of its property and assets, along with the duty of full and candid disclosure of all material facts thereto.

31.    To comply with their fiduciary duties, the Individual Defendants may not take any action that:

a.    Favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets; or

b.    Will provide the Individual Defendants with preferential treatment at the expense of, or separate from, Franklin's public stockholders.

32.    In accordance with their duty of loyalty, the Individual Defendants are obligated to refrain from:

7

a.     Participating in any transaction where the Individual Defendants' loyalties are divided;

b.     Participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and

c.     Unjustly enriching themselves at the expense or to the detriment of the public stockholders.

33.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, and candor owed to Plaintiff and other public stockholders of Franklin.

## CLASS ACTION ALLEGATIONS

34.     For purposes of the breach of fiduciary duties claims, Plaintiff brings this action individually and as a class action on behalf of all holders of Franklin stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

35.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

36.     The Class is so numerous that joinder of all members is impracticable.  According to the Merger Agreement, as of July 14, 2014, Franklin had 11,781,475 shares of common stock outstanding.  These shares are held by hundred, if not thousands, of beneficial holders who are geographically dispersed across the country.

8

37.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

a.      whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit Plaintiff and other members of the Class, in connection with the Proposed Transaction;

b.      whether the Individual Defendants have breached any of their other fiduciary duties to Plaintiff and other members of the Class in connection with the Proposed Transaction, including the duties of care, loyalty, and candor;

c.      whether the Individual Defendants have breached their fiduciary duties of candor to Plaintiff and the other members of the Class in connection with the Proposed Transaction by failing to disclose all material information upon which they are able to make an informed decision about whether to vote their shares in favor of the Proposed Transaction;

d.      whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

e.      whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

f.      whether TowneBank is aiding and abetting the wrongful acts of the Individual Defendants.

38.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

39.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

40.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

41.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

42.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

43.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A.     Company Background and Strong Financial Performance and Growth**

44.     Franklin operates as the holding company for Franklin Bank, which provides retail deposit, investment brokerage, and commercial real estate finance services in Richmond and Central Virginia.

45.     The Company was founded as Federal Savings and Loan Association of Sandston in 1933 and took its current name in 1941. From its founding through 2011, the Company operated as a mutual savings bank. As a mutual savings bank, the Company did not offer checking accounts or maintain ATMs and used passbooks for deposits.

46.    In 2011, the Company undertook a business renaissance. Franklin shifted away from its mutual savings bank form to a bank holding company structure – a more modern model. In addition, the Company went public with a $138 million IPO.  Since the Company's modernization, Franklin has delivered solid financial results and leads its peers in several respects.

47.    As part of Franklin's renaissance, the Company embarked on a joint venture with TowneBank in 2012. Through the joint venture, Franklin Bank refers home mortgage borrowers to TowneBank's residential loan operation and the profits are split between the banks.

48.    The major overhaul of Franklin's structure and operations has borne fruit—over the course of the past three years, the Company's financial condition has consistently improved. According to a press release issued on December 1, 2011 announcing the Company's fiscal year 2011 earnings, Franklin "reported net income of $1.4 million, or $0.11 per share, compared to a net loss of $1.1 million for the year ended September 30, 2010." In addition, according to the Company's website, Franklin achieved a return on average assets ("ROAA") of 0.13% for the 2011 fiscal year.

49.    In fiscal year 2012, the Company continued its improvement over the two previous years. In the press release announcing the earnings for the 2012 fiscal year issued on November 15, 2012, the Company reported net income of $6.5 million, or $0.50 per share. In addition, according to the Company's website, Franklin achieved a ROAA of 0.59% for the 2012 fiscal year.

50.    In the fiscal year ended September 30, 2013, the Company again improved its financial performance.  According to the press release announcing the fiscal year 2013 earnings issued on November 13, 2013, the Company achieved net income of $9.3 million, or $0.78 per share. In addition, according to the Company's website, Franklin achieved a ROAA of 0.88% for the 2013 fiscal year.

51.     During the current fiscal 2014 year, Franklin has continued to show solid financial performance. According to the press release issued on February 6, 2014 announcing the Company's first quarter 2014 earnings, the Company achieved net income of $2.6 million in the first quarter, or $0.23 per share, compared to $2.3 million, or $0.19 per share, for the same period in the previous year. In addition, during the quarter the Company's tangible book value increased $0.27 per share to $19.97 per share.

52.     During the second quarter of this year the Company reported even better financial performance. According to the press release issued on May 6, 2014 announcing the second quarter 2014 earnings, the Company achieved net income "of $4.4 million, or $0.38 per diluted share, compared to $2.7 million, or $0.23 per diluted share, for the [same quarter in] 2013." In addition, during the quarter the Company's tangible book value increased $0.40 per share to $20.37 per share.

53.     Finally, during the most recent quarter, third quarter 2014, the Company again beat its previous year performance. According to the press release issued on August 5, 2014 announcing the third quarter 2014 earnings, the Company achieved net income "of $2.7 million, or $0.24 per diluted share, compared to $1.7 million, or $0.14 per diluted share, for [the same quarter in] 2013." In addition, during the quarter the Company's tangible book value increase another $0.40 per share to $20.77 per share.

54.     Furthermore, the Company's return on average assets has significantly improved. According to the Franklin's "Tearsheet" posted on its website, the Company's ROAA for the four trailing quarters was 1.14%, up from 0.88% at the end of the fiscal year that ended September 30, 2013. The Tearsheet also discloses Franklin's superior performance over its peers. Over the last

four quarters, Franklin's ROAA was more than double its peer median of 0.54% and is more than seven times its peer average of 0.15%.

55.     Franklin's stock price reflects the Company's consistently improving financial performance. Since its IPO in April 2011, the Company's stock price has risen nearly 150% - from a $10.00 per share IPO price to a recent high of $24.60 per share on July 2, 2014, less than two weeks before the announcement of the Proposed Transaction.

56.     The Proposed Transaction, however, will deprive Franklin's loyal stockholders of the benefits of the drastic financial turnaround that has occurred at the Company since its IPO. Indeed, despite the Company's August 5, 2014 press release reporting another strong quarter, the Company's stock price has declined sharply since the announcement of the Proposed Transaction – from a pre-deal announcement closing price of $21.90 on July 14, 2014 to closing at $19.01 on September 26, 2014.

**B.     The Flawed Process**

57.     Since completing Franklin's stock conversion in 2011, Company insiders have intended to enter into a merger transaction upon the expiration of the three-year period during which no person was permitted to acquire more than 10% of Franklin's common stock without regulatory approval.

58.     According to the Proxy, beginning in 2012, several larger financial institutions contacted Franklin's Chairman and CEO, Defendant Wheeler to inquire about the Company's plans after the expiration of the 3-year restriction period.

59.     Despite the strong interest by a number of larger financial institutions in the Company, the Board, led by Wheeler, conducted a rushed process to deliver the Company to its preferred bidder, TowneBank.

13

60.    On April 30, 2014, upon the expiration of the three-year restriction period, the Board retained Keefe, Bruyette & Woods, Inc. ("KBW") as Franklin's financial advisor in connection with exploring the Company's strategic alternatives. The Board also formed a merger committee comprised of Defendants Wheeler, Mackey, Harrison, Robertson, Scott, and Wiltshire.

61.    According to the Proxy, Franklin's management worked with KBW to compile a list of "qualified financial institutions."

62.    In May 2014, KBW contacted 11 institutions, including TowneBank. TowneBank and six other institutions showed interest and entered into a confidentiality agreements with Franklin. The Company provided access to an online diligence data room to these institutions beginning on May 14, 2014 and were instructed to submit their preliminary indications of interest by May 30, 2014 – just two weeks later.

63.    Unfortunately for Franklin stockholders, KBW conducted a sham sale process, which was instituted for the purpose of avoiding stockholder criticism by creating the appearance that the Company was properly discharging its financial duties.

64.    Although not explicitly discussed in the Proxy, TowneBank's courtship of Franklin began in 2012, when the two companies entered into a joint venture to operate Franklin Federal Mortgage Center ("FFMC"). Specifically, beginning in January 2013, Franklin discontinued making direct single-family and owner-occupied residential mortgage loans and, instead, a subsidiary of Franklin Bank made a 49% minority interest investment in FFMC, with majority interest held by TowneBank. Under the terms of the joint venture, FFMC, which leases space from Franklin Bank, originates loans to Franklin Bank's customers and other borrowers, and TowneBank processes such loans. The business affairs of FFMC are managed by a board of

managers, which is comprised of two officers from Franklin Bank and two officers from TowneBank.

65.    As reflected in the Proxy, Franklin's Chairman and CEO, Defendant Wheeler met with several executives of TowneBank in June 2013 to discuss an "affiliation" between the two companies. Further such discussions between Defendant Wheeler and TowneBank executives occurred on at least three more occasions, in July 2013 and in January 2014.

66.    Through its joint venture with Franklin, as well as meetings with Wheeler to explicitly discuss a potential merger of the two companies, TowneBank had a clear understanding of the value of Franklin. More importantly, TowneBank had the advantage of time and information over the other potential bidders solicited by KBW.

67.    Unsurprisingly, given the short time frame, TowneBank was the only institution solicited by KBW that submitted an indication of interest by May 30, 2014. Specifically, TowneBank proposed an all-stock transaction at an indicated price of $23.00 per share based on a fixed exchange ratio of 1.499 shares of TowneBank stock for each Franklin share.

68.    At its meeting on June 4, 2014, the Board discussed TowneBank's proposal and potentially pursuing the acquisition of two financial institutions identified by KBW.

69.    On or about June 23, 2014, Franklin received an indication of interest from an entity identified in the Proxy as "Company A," which KBW had contacted following the June 4th Board meeting. Company A proposed an all-stock transaction whereby Franklin stockholders would own a majority of the combined company, and provided a one-time special dividend by Franklin to Franklin's stockholders.

70.     On June 26, 2014, after conducted further due diligence review of Franklin, TowneBank revised its proposal and inexplicably lowered the fixed exchange ratio to 1.375 TowneBank shares for each Franklin share.

71.     On June 30, 2014, KBW, as directed by the Board, made a single attempt to "discuss further the price offered." TowneBank responded by agreeing to increase the exchange ratio to 1.40 TowneBank shares for each Franklin share, which is still below the exchange ratio indicate in its preliminary offer.

72.     On July 2, 2014, Franklin and TowneBank entered into an exclusivity agreement.

73.     On July 14, 2014, the Board approved the Proposed Transaction and the companies entered into the Merger Agreement.

## C.     The Board Entered Into The Proposed Transaction For Inadequate Consideration

74.     Despite the Company's recent strong financial results and the Board's complete failure to ensure it got the best price for stockholders, in a press release dated July 15, 2014, the Company announced that it had entered into a merger agreement with TowneBank pursuant to which TowneBank will acquire all of the outstanding shares of Franklin in an all stock transaction whereby Franklin stockholders will receive 1.40 shares of TowneBank stock for each share of Franklin stock that they own. Based on the value of TowneBank, the Proposed Transaction is valued at approximately $275 million, or $23.04 per share. Given the Company's recent strong performance, and its positioning for continued growth, the Proposed Transaction consideration is inadequate and significantly undervalues the Company.

75.     In particular, the Merger Agreement fails to include a collar provision that would operate to protect Franklin stockholders from decreases in the stock price of TowneBank prior to the consummation of the Proposed Transaction. Indeed, since the announcement of the Proposed Transaction, TowneBank's stock price has significantly declined. The value of the proposed

consideration being provided to Franklin stockholders has dropped more than *16%* since the deal was first announced – from $23.04 per Franklin share (based on TowneBank stock's closing price of $16.46 per share on July 14, 2014) to $19.31 per Franklin share (based on TowneBank stock's recent closing stock price of $13.79 per share on September 26, 2014).

76.   As a result of the flawed process and the lack of a collar provision, the Proposed Transaction consideration is inadequate and does not account for Franklin's recent strong performance as well as its future growth prospects.  Indeed, the Proposed Transaction provides Franklin stockholders with a *negative premium* to the Company stock's 52-week trading high of $24.60 per share on July 2, 2014.

**D.   The Franklin Defendants Obtained Special Benefits Not Available to Franklin's Public Stockholders**

77.   Although the Proposed Transaction does not provide stockholders with adequate consideration, the Company's executive officers and directors will receive lucrative post-merger employment positions and windfall cash awards as a result of the Proposed Transaction.

78.   As disclosed in the press release announcing the Proposed Transaction, Defendant Wheeler "will join the TowneBank Corporate Board an Executive Committee as well as serving on the TowneBank of Richmond Board along with other Franklin board members[.]" Thus, all Board members are conflicted and stand to be appointed onto a newly created board of directors following the consummation of the Proposed Transaction.

79.   If the Proposed Transaction closes, the Company's conflicted executive management team also stands to receive the following Golden Parachute payments:

**Golden Parachute Compensation (1)**

| Name | Cash (2) | Equity (3) | Pension/ NQDC | Perquisites/ Benefits (4) | Tax Reimbursement (5) | Other | Total |
|---|---|---|---|---|---|---|---|
| Richard T. Wheeler, Jr. | $1,144,322 | $ 2,132,976 | $ 70,185(6) | $ 54,719 | – | – | $3,402,202 |
| Donald F. Marker | 731,761 | 1,552,746 | – | 34,272 | – | – | 2,318,779 |
| Steven R. Lohr | 780,071 | 1,426,698 | – | 38,052 | – | – | 2,244,821 |

17

| Barry R. Shenton | 763,581 | 1,426,698 | – | 24,516 | – | – | 2,214,795 |

(1) All amounts reflected in the table are attributable to double trigger arrangements (*i.e.*, the amounts are triggered by the change in control that will occur upon completion of the merger and payment is conditioned upon the executive's qualifying termination of employment following a change in control), except for the accelerated vesting of stock options and restricted stock awards, which will occur upon completion of the merger.

(2) Amounts reflect cash severance benefits that would be payable in a lump sum payment under the employment agreements entered into with each of the named executive officers, assuming an involuntary termination by TowneBank other than for cause or due to a resignation by the named executive officer for good reason, in each case prior to the October 1, 2016 expiration date of the current term of each employment agreement. The cash severance benefits payable under these agreements are equal to 3.0 times the executive's average annual taxable income reported by Franklin for the five calendar years immediately preceding the calendar year in which the change in control occurs (2010 – 2014, assuming completion of the merger on January 2, 2015), excluding any amounts received by the executive under Franklin's phantom-equity deferred compensation plans and stock-based deferral plan.

(3) Represents single-trigger acceleration of outstanding restricted stock awards and stock options that are unvested at the time of the merger. The amounts related to the accelerated vesting of the restricted stock awards are expressed as an aggregate dollar value which represents $20.85 (the average closing market price of Franklin common stock over the first five business days following the first public announcement of the merger) for each unvested share of common stock for which vesting will be accelerated as a result of the merger. The amounts related to the accelerated vesting of the stock options are expressed as an aggregate dollar value which represents the difference between $20.85 and the exercise price for each unvested stock option grant for which vesting will be accelerated as a result of the merger. Importantly, these values are different from – and significantly higher than – the valuation of unvested equity grants for purposes of Section 280G of the Code, which valuation is determined as of the date of the change in control and is based on several factors, including the stock's fair market value, and the length of time until the unvested equity grants would otherwise have vested, assuming no change in control.

80.    Moreover, members of the Board and Franklin's management will benefit from acceleration of their unvested stock awards upon the consummation of the Proposed Transaction.

81.    Pursuant to the terms of the Merger Agreement, rather than receiving the same merger consideration as Plaintiff and other public stockholders (*i.e.*, TowneBank stock), the stock options to acquire Franklin common stock will be converted into cash from TowneBank in an amount equal to the product of (i) the average of the closing price per share of TowneBank common stock for the 10 consecutive trading days ending on and including the fifth trading day prior to the closing date of the merger multiplied by the exchange ratio minus the per share exercise price of such option, and (ii) the number of shares of Franklin common stock subject to such option. According to the Proxy, the cash to be paid by TowneBank for stock options is expected to total $11,567,000. Also pursuant to the Merger Agreement, restricted stock awards will vest and the restrictions thereon will lapse, allowing the holder to receive the merger consideration (*i.e.*,

1.40 shares of TowneBank common stock). Finally, the Proxy indicates that the aggregate value of the accelerated vesting of unvested restricted stock awards held by Franklin's officers and directors is approximately $5.2 million, assuming a value of $20.85 per Franklin share.

82.     The conflicted Board approved the Proposed Transaction and unanimously recommended that stockholders vote in favor of the Proposed Transaction in an attempt to aggrandize its own interests at the expense of and to the detriment of Franklin.

## E.     The Unduly Restrictive Deal Protection Devices

83.     As part of the Merger Agreement, Defendants agreed to certain onerous deal protection devices that may impair competing offers from emerging for the Company.

84.     Section 6.07(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by TowneBank. Section 6.07(a) demands that the Company terminate any and all prior or on-going discussions with other potential acquirers. In fact, the Company may not even respond to unsolicited inquiries from potential competing bidders that may lead to a bona fide offer.

85.     Pursuant to § 6.07(b) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, before the Company may furnish any information to the bidder, the Board must first determine that such a proposal is or likely to result in a superior offer. In addition, the Company must notify TowneBank of the bidder's identity and the terms of the bidder's offer within 24 hours.

86.     In addition, § 6.07(d) of the Merger Agreement demands that should the Board determine to enter into a superior competing proposal, it must grant TowneBank five business days in which the Company must negotiate in good faith with TowneBank (if TowneBank so desires) and allow TowneBank to make a counter-offer so that the superior offer is no longer superior. In

other words, the Merger Agreement gives TowneBank access to any rival bidder's information and allows TowneBank a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor TowneBank, which can piggy-back on the due diligence of the foreclosed second bidder.

87.     The Merger Agreement also provides that a termination fee of $11 million must be paid to TowneBank by Franklin if the Company decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

88.     Pursuant to § 6.13 of the Merger Agreement, the Board and all executives of the Company entered into Lock-up Agreements whereby they agreed to vote their shares in favor of the Proposed Transaction.

89.     In addition to the preclusive deal protection provisions, Board members and Company's executive officers have entered into Voting Agreements and agreed to vote their shares in support of the Proposed Transaction. Currently, these insiders hold approximately 16% of the Company's outstanding stock.

**F.      The Materially Misleading and Incomplete Proxy**

90.     Defendants have failed to provide complete and accurate information about the Merger to Franklin's public stockholders. As set forth in more detail below, the Proxy omits and/or misrepresents material information concerning, *inter alia*: (1) the management-prepared financial forecasts of Franklin and TowneBank; (2) potential conflicts of interest of KBW; (3) the data and inputs underlying the financial analyses that purport to support the Fairness Opinions rendered by KBW; and (4) the background of the Proposed Transaction.

### *Disclosures Related to the Financial Forecasts*

91.     The Proxy fails to provide a fair summary of the financial projections of Franklin and TowneBank prepared by their respective management that were provided to and relied upon by KBW, as well as TowneBank's financial advisor, Sandler O'Neill + Partners, L.P. ("Sandler"), in their respective fairness opinions and which are necessary for Franklin stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.  Notably, the Proxy fails to disclose the following projected line items:

a.      Unleveraged free cash flow.

b.      Total assets;

c.      Total Liabilities;

d.      Total Equity;

e.      Tangible book value;

f.      Tangible common equity;

g.      Earnings per share ("EPS");

h.      Common dividends per share; and

i.      Synergies and cost savings.

92.     It is well-settled that management's financial projections are the lifeblood of the Company and are crucial to providing stockholders management's inside view of the Company's value and future prospects necessary for making an informed decision about whether to vote in favor of the Proposed Transaction and at the offer price.  Moreover, such forecasts are material to Plaintiff and other reasonable investors because, in addition to the few line item projections disclosed in the Proxy, both KBW and Sandler reviewed and relied upon the omitted projections in preparing their respective fairness opinions.  As such, it is materially misleading not to disclose these projections.

*Disclosures Potential Conflicts of Interest Concerning KBW's and Its Financial Analyses*

93.      The Proxy discloses that KBW will collect "a total cash fee of approximately 1.0% of the aggregate merger consideration, of which a portion became payable to KBW upon the rendering of the opinion, and the majority of which is contingent upon the consummation of the merger." This disclosure is materially incomplete and misleading as a reasonable investor may assume that the amount of KBW's contingent fees are merely 51% of its aggregate fees, when in fact, the contingent amount on the completion of the Proposed Transaction may be as high as 99% of its aggregate fees.  As such, Defendants should disclose the amount of fees that KBW has already received and the amount (or estimated amount) that is contingent upon the successful completion of the Proposed Transaction.

94.      The Proxy discloses certain information regarding KBW's financial analyses used to support its fairness opinion. These disclosures concerning KBW's financial analyses are materially incomplete and misleading in a number of respects.

95.      The Proxy fails to disclose material information concerning KBW's *Selected Companies Analyses* for both Franklin and TowneBank, thereby rendering the summary of these analyses materially misleading.  For example, the Proxy omits the following information:

       a.      The multiples and financial ratios observed for each of the selected companies used in the analysis; the summary of these analyses is rendered materially misleading without this information in light of the wide range of values observed and because Franklin's Board was provided with such information, rather than merely the minimum, average, median and maximum values of the observed multiples and ratios;

       b.      Whether KBW used financial data for the most recent twelve-month period rather than as described in the summary of the analysis, whether KBW annualized the last

22

three-months of data reviewed, or whether KBW utilize a combination of three-month and twelve-month figures; the summary of these analyses is rendered materially misleading without this information because the Proxy states that for each of the selected companies, KBW reviewed their financial data for the "most recent three-month period," yet one of the observed ratios is stock price over LTM (*last twelve months*) EPS (earnings per share);

      c.     The number of LTM P/E (price to earnings) multiples excluded because they were greater than 30.0x because Plaintiff and other stockholders cannot determine whether KBW selectively excluded these higher multiples in order to produce lower average, median, and maximum values;

      d.     The manner in which the financial data prepared by KBW departs from Franklin's and TowneBank's respective historical financial statements and KBW's basis for such departure; the summary of these analyses is rendered materially misleading without this information because the Proxy states that, in connection with this analyses, "[c]ertain financial data prepared by KBW . . . may not correspond to the data presented in" Franklin and TowneBank's respective "historical financial statements" and Plaintiff and other stockholders cannot determine whether KBW selectively departed from the companies' respective historical financial statements in order to support its opinion that the merger consideration provided by the Proposed Transaction is fair and adequate;

      e.     Explain KBW's decision to examined two peer groups for Franklin but only one peer group for TowneBank; the summary of these analyses is rendered materially misleading without this information given that Sandler examined two peer groups for TowneBank but only one peer group for Franklin; and

f.      Whether KBW used the management-prepared projections for Franklin; or the consensus street estimates; the summary of these analyses is rendered materially misleading without this information given that, unlike the summary of KBW's *Discounted Cash Flow ("DCF") Analysis*, which indicates that management projections were considered, no such information is provided in the summary of this analysis and the fact that the sole public research analyst covering Franklin is Sandler, TowneBank's financial advisor; thus, KBW's reliance on the consensus street estimates may be considered by reasonable investors as suspect.

96.     The Proxy fails to disclose material information concerning KBW's *Selected Transactions Analysis* for both Franklin and TowneBank, thereby rendering the summary of these analyses materially misleading. For example, the Proxy omits the following information:

a.      The multiples and financial ratios observed for each of the selected transactions used in the analysis; the summary of these analyses is rendered materially misleading without this information in light of the wide range of values observed and because Franklin's Board was provided with such information, rather than merely the minimum, average, median and maximum values of the observed multiples and ratios; and

b.      The number of LTM P/E (price to earnings) multiples excluded because they were greater than 30.0x because without such information, Plaintiff and other stockholders cannot determine whether KBW selectively excluded these higher multiples in order to produce lower average, median, and maximum values.

97.     The Proxy fails to disclose material information concerning KBW's *DCF Analysis*, thereby rendering the summary of this analysis materially misleading. For example, the Proxy omits the following information:

      a.     Whether KBW projected the free cash flow of Franklin or used the free cash flow projections prepared by management, and if the former, KBW's free cash flow projections used in this analysis (if the latter, as discussed *supra*, disclose in the projections section);

      b.     The basis for KBW's selection of a discount rate range of 10.0% to 15.0%, including whether it reflects a weighted average cost of capital ("WACC") or cost of equity; and

      c.     The basis for terminal earnings multiples range of 11.0x to 16.0x, which appear low relative to Franklin's peer companies and the peer transactions selected by KBW.

The omitted information was an integral part of KBW's analysis and doubtlessly presented to and considered by the Board and/or its merger committee. Without such information, Plaintiff and other Franklin stockholders will not be able to determine the adequacy and reliability of KBW's *DCF Analysis*.

98.     The Proxy fails to disclose material information concerning KBW's *Pro Forma Financial Impact Analysis*, thereby rendering the summary of this analysis materially misleading. For example, the Proxy omits the following information:

      a.     The identity and quantification of the pro forma assumptions; and

      b.     The quantification of the estimated accretion and dilution, as well as the capitalization ratios indicated in the analysis.

The omitted information was an integral part of KBW's analysis and doubtlessly presented to and considered by the Board and/or its merger committee. Without such information, Plaintiff and

other Franklin stockholders will not be able to determine the adequacy and reliability of KBW's *DCF Analysis*.

99.    These material facts that were used by KBW to prepare the valuation analyses in support of its Fairness Opinion presented to the Board are critical to Franklin's stockholders' ability to assess the credibility of KBW's analyses upon with the Board relied in recommending the Proposed Transaction and necessary to provide stockholders with a fair summary of KBW's analyses and work.

### *Disclosures Related to the Process by Which the Board Agreed to the Proposed Transaction and the Special Benefits Accruing to Company Insiders*

100.    The Proxy fails to disclose material information concerning the events leading up to the announcement of the Merger Agreement and the special benefits that will accrue to Franklin's directors and executive officers upon the consummation of the Proposed Transaction. In particular, the Proxy fails to disclose:

a.    The number of "larger financial institutions" that had contacted Defendant Wheeler and/or other Franklin representatives during 2012 through 2014 to inquire about Franklin's plans upon the expiration of the three-year post-conversion period, including whether TowneBank was one of the institutions that had made such an overture and, if so, the approximate date of that initial contact and whether TowneBank was among the four institutions that met with Wheeler informally in 2003 and 2014;

b.    With regard to the June 2013 meeting between Defendant Wheeler and TowneBank representatives, the type of affiliation between Franklin and TowneBank discussed, including whether corporate governance or any specific terms were contemplated;

c. The number and identities of the financial advisors with whom Franklin had discussions in 2014, other than KBW, and the Board's reasons for selecting KBW as the Company's advisor in connection with a potential transaction;

d. Whether the six financial institutions that met with Defendant Wheeler between January 2014 through April 2014 included all four institutions that informally met with Wheeler during 2013;

e. Whether Wheeler informed the Board at its April 30, 2014 of his meetings with TowneBank and the other five financial institutions;

f. The Board's reasons for forming a merger committee that includes six out of the seven Board members, excluding only non-employee director Wootton;

g. With regard to the compilation of the "list of qualified financial institutions likely to have an interest in engaging in a potential business combination with Franklin," the criteria used by Franklin's management and KBW in their selection of financial institutions included on that list, the number of institutions on that list, whether Company A and all institutions with whom Wheeler had previously met with were included, and whether KBW contacted all the institutions appearing on that list;

h. A fair summary of the discussions and negotiations between Franklin and Company A, and the reasons that negotiations ended;

i. Whether Franklin's management and KBW considered including any private equity firms on the list of potential bidders and partners, and, if not, the reasons they failed to do so;

j.      Whether KBW or any other Company represented contacted any potential acquirers or other potential strategic partners after the month of May 2914, other than Company A;

k.      Whether the management-prepared projections of Franklin was provided to any other potential acquirers or strategic partners, other than TowneBank and, if so, when such projections were provided;

l.      The basis for deciding on 1.40 as the fixed exchange ratio, and whether the Board considered and/or negotiated for the inclusion of a collar provision, and if not, the reasons for not doing so;

m.      TowneBank's reason for lowering the proposed exchange ratio from a fixed ratio of 1.499 shares, as indicated in its May 28, 2014 preliminary indication of interest, to 1.375 shares on June 26, 2014;

n.      A summary of the dates and discussions between Franklin and TowneBank regarding potential post-merger employment and directorship opportunities for Franklin's officers and/or directors, including whether such discussions took place prior to May 1, 2014;

o.      A summary of the dates and discussions between Franklin and other bidders and potential bidders, including Company A, regarding potential post-merger employment and directorship opportunities for Franklin's officers and/or directors;

p.      A summary of the discussions concerning the expected synergies as a result of the Proposed Transaction, including a quantification of the synergies and whether there are phase-in costs or capital expenditures necessary to realize these synergies;

q.      The reason for assuming a transaction value of $20.85 per Franklin share in calculating the executive's "Golden Parachute Compensation," when both KBW and Sandler assumed a higher value of $22.65 per Franklin share in their respective fairness opinions; and

r.      A summary of the vested and unvested stock options and restricted stock awards held by *each* officer and director that automatically vest upon the consummation of the Proposed Transaction and the value of these options and restricted stock awards.

101.    This information, which bears directly on the process undertaken by the Board and the fairness of the consideration offered to Franklin stockholders, is material. Without this information, Plaintiff and other Franklin stockholders cannot appropriately assess whether the Proposed Transactions is in their best interests, or whether Wheeler and Franklin's other directors and management unreasonably favored a deal with TowneBank to the detriment of the interests of public stockholders. The omission of this information regarding the process and consideration obtained renders all statements pertaining to the Board's belief that the Proposed Transaction provided a better opportunity to the Company's stockholders than any alternatives available to be materially misleading.

102.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### Brought Individually

103.    Plaintiff repeats and realleges all previous allegations as if set forth in full herein, excluding the Class Action Allegations set forth herein.

104.    Defendants have issued the Proxy with the intention of soliciting stockholder support of the Proposed Transaction.

105.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

106.    Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

107.    The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

108.    The misrepresentations and omissions in the Proxy are material to Plaintiff, and Plaintiff will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against All Individual Defendants**
**Brought Individually**

109.    Plaintiff repeats and realleges all previous allegations as if set forth in full herein, excluding the Class Action Allegations set forth herein.

110.    The Individual Defendants acted as controlling persons of Franklin within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Franklin and participation in and/or awareness of the Company's operations

and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading

111. Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

112. Specifically, the Proxy violates the Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

113. The misrepresentations and omissions in the Proxy are material to Plaintiff, as well as the Company's other public shareholders, and Plaintiff and other shareholders will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

**COUNT III**
**Breach of Fiduciary Duties**
**(Against All Individual Defendants)**

114. Plaintiff repeats and realleges all previous allegations as if set forth in full herein, excluding the Class Action Allegations set forth herein.

115.    The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the public stockholders of Franklin and have acted to put their personal interests ahead of the interests of Franklin stockholders.

116.    The Individual Defendants have breached their fiduciary duties of care and loyalty owed to the stockholders of Franklin because, among other reasons:

      a.     They failed to take steps to secure adequate consideration for Franklin's public stockholders and took steps to avoid competitive bidding;

      b.     They failed to properly value Franklin; and

      c.     They ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connections with the Proposed Transaction.

117.    As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Franklin's assets and will be prevented from benefiting from a value-maximizing transaction.

118.    Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

119.    The Individual Defendants are engaging in self-dealing, are not acting in good faith toward Plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

120.    Plaintiff and the Class have no adequate remedy at law.

## COUNT III
### Breach of Fiduciary Duty – Candor
### (Against All Individual Defendants)

121.   Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

122.   The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting Franklin stockholders.

123.   As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

124.   As a result, Plaintiff and the Class members are being harmed irreparably.

125.   Plaintiff and the Class have no adequate remedy at law

## COUNT IV
### Aiding and Abetting
### (Against TowneBank)

126.   Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

127.   As alleged in more detail above, defendants TowneBank have aided and abetted the Individual Defendants' breaches of fiduciary duties and violations of the Exchange Act.

128.   As a result, Plaintiff and the Class members are being harmed.

129.   Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)   Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)   Declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C)     Declaring that Defendants have breached their fiduciary duties, and/or aided and abetted such breach, to Plaintiff and the Class;

(D)     Declaring that the Proposed Transaction is unfair, unjust, and inequitable to Plaintiff and the other members of the Class;

(E)     Enjoining, preliminarily and permanently, the Proposed Transaction, unless or until the Company adopts and implements a procedure or process to: (i) obtain the highest possible value in the best interests of Plaintiff and other Franklin shareholders, and (ii) provide all material disclosures to Plaintiff and all Franklin shareholders with which they are able to make informed decisions about whether to vote their shares in favor of the Proposed Transaction;

(F)     In the event that the Proposed Transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(G)     Directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(H)     Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(I)     Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Dated:  September 30, 2014

Elizabeth Tripodi, VA Bar #73483
LEVI & KORSINSKY LLP
1101 30th St. NW
Suite 115
Washington, D.C. 20007
Telephone:     (202) 524-4290
Facsimile:     (202) 333-2121

etripodi@zlk.com

LEVI & KORSINSKY LLP
Joseph E. Levi
Julia J. Sun
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (866) 367-6510

*Attorneys for Plaintiff*